## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| POLYMEDIX PHARMACEUTICALS, INC., et al.,: | | Case No. 13-10690 (BLS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Objection Deadline: 7/2/13 at 4:00 p.m.** |
| | : | **Hearing Date: 7/24/13 at 11:30 a.m.** |

## TD BANK N.A.'S MOTION FOR RELIEF FROM
## AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

TD Bank, N.A. hereby moves this Honorable Court to grant it relief from the automatic stay and in support hereof, respectfully represents:

## I.    FACTUAL BACKGROUND

1.    Movant, TD Bank, N.A. ("Bank"), is a national banking association organized and existing under the laws of the United States of America, which maintains a place of business at 2005 Market Street, 2nd Floor, Philadelphia, Pennsylvania 19103.

2.    Bank and PolyMedix, Inc. ("Debtor") entered into that certain Letter of Credit Agreement on November 24, 2010 whereby Bank issued a Standby Letter of Credit ("Letter of Credit") in the amount of One Million, Four Hundred Thousand Dollars ($1,400,000) through December 1, 2011 and in the amount of One Million Dollars ($1,000,000) thereafter. A true and correct copy of the Standby Letter of Credit Agreement is attached hereto, incorporated herein and marked as Exhibit "A".

3.    As security for the Letter of Credit, Polymedix Pharmaceuticals, Inc. ("Debtor/Guarantor") executed and delivered to Bank a Pledge Agreement and Limited Guaranty. A true and correct copy of the Pledge Agreement is attached hereto, incorporated herein and marked as Exhibit "B". A true and correct copy of the Limited Guaranty is attached

hereto, incorporated herein and marked as Exhibit "C".    Collectively, the Standby Letter of Credit Agreement, Pledge Agreement and Limited Guaranty are referred to herein as the "Loan Documents."

4.    In the Pledge Agreement, Debtor/Guarantor pledged a Certificate of Deposit Account, No. 4733270782, deposited with Bank (the "C.D.") *See* Schedule A to Exhibit "B".

5.    The Letter of Credit was issued for the benefit of Radnor Properties-SDC, L.P. ("Landlord") as security for a lease agreement entered into between Landlord and Debtor.  A true and correct copy of the Letter of Credit is attached hereto, incorporated herein and marked as Exhibit "D".

6.    As of June 7, 2013, the balance of the C.D. was $1,000,669.12.  The value of the C.D. is less than Debtor's and Debtor/Guarantor's current indebtedness to Bank.

7.    Debtor subsequently defaulted on the terms of the lease agreement with Landlord by failing to pay Landlord rents due and owing, and on April 5, 2013, Landlord made demand, as required by the Letter of Credit, to Bank to redeem the Letter of Credit. A true and correct copy of the Statement from Landlord is attached hereto, incorporated herein and marked as Exhibit "E".

8.    As required by the Letter of Credit, Bank paid One Million Dollars ($1,000,000.00) to Landlord on April 12, 2013.  A true and correct copy of a Wire Transfer evidencing payment is attached hereto, incorporated herein and marked as Exhibit "F".

9.    The Loan Documents are governed by Pennsylvania Law. *See* Exhibit "B" ¶ 17.

10.    Under the Pledge Agreement, an event of default occurs when, *inter alia*, "the institution by or against the Pledgor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code . . ." *See* Exhibit "B" ¶ 2(c)(i).

11.     An event of default occurred under the Letter of Credit Agreement to wit, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on or about April 1, 2013.

12.     Additionally, Debtor/Guarantor defaulted on the Pledge Agreement when it too filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on or about April 1, 2013.

13.     In the event of default, the Loan Documents and Pennsylvania law permit Bank to sell, dispose of, enforce or otherwise collect the Collateral. *See* Exhibit "B," ¶ 7 which provides *"[t]he Bank is hereby authorized, at its election, after an Event of Default or after demand, without any further demand or notice except to such extent as notice may be required by applicable law, to sell or otherwise dispose of all or any of the Collateral at public or private sale and/or enforce or collect the Collateral (including, without limitation, the liquidation of deposit accounts, debt instruments or securities and the exercise of conversion rights with respect to convertible securities, whether or not such instruments or securities have matured and whether or not penalties or other charges are imposed on account of such action."*

14.     Further, Bank and Debtor/Guarantor entered into a Cash Management Master Agreement on October 14, 2010 whereby Bank agreed to provide various cash management services to Debtor/Guarantor in exchange for certain service fees, to be determined by fee schedules issued by the Bank.  A true and correct copy of the Cash Management Agreement is attached hereto, incorporated herein and marked as Exhibit "G".

15.     The Cash Management Master Agreement is governed by New Jersey law. *See* Exhibit "G," ¶ 26.

3

16.    Bank is entitled to terminate the Cash Management Master Agreement without prior notice if, *inter alia*, Debtor/Guarantor commences any bankruptcy proceeding. *See* Exhibit "G," ¶ 14.4(ii). In the event of termination, "all fees due Bank under this Agreement as of the time of termination shall become immediately due and payable." *See* Exhibit "G," ¶ 14.4.

17.    Bank has performed services under the Cash Management Master Agreement for which it is owed $2,162.51.

18.    In the event of default, New Jersey law permits Bank to exercise its common law right of setoff to receive remuneration for the services provided from any funds held by Debtor/Guarantor in Bank.

## II.    RELIEF REQUESTED

### TD Bank, N.A. Should be Granted Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1).

19.    Under 11 U.S.C. § 362(d), the court can grant relief from the automatic stay under the following terms:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property under subsection (a) of this section of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

20.     In a Chapter 7 liquidation case, wherein reorganization is not a possible outcome, the automatic stay prevents "one creditor from pursuing a remedy to the disadvantage of other creditors." *In re W.R. Grace & Co.*, 475 B.R. 34, 147 (D. Del. 2012).

21.     Whether sufficient "cause" exists to grant relief from automatic stay depends on "the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)

22.     Courts generally consider three factors in determining whether sufficient cause exists to grant relief from stay: (1) the prejudice to the bankruptcy estate resulting from lifting the stay; (2) the balance of hardships vis-à-vis the moving party and the bankruptcy estate; and (3) the likelihood the party seeking relief from stay will prevail on the merits of its claim. *In re Downey Financial Corporation*, 428 B.R. 595, 609 (Bankr. D. Del. 2010)

23.     The Bankruptcy estate will not be prejudiced by terminating the automatic stay to permit the Bank to exercise its rights with respect to the C.D. The C.D. is not required for an effective reorganization as Debtor and Debtor/Guarantor are not seeking to reorganize, but to be liquidated.

24.     In contrast, Bank will be prejudiced by the refusal to lift the automatic stay as the Letter of Credit has already been redeemed by Landlord to the Bank's detriment.

25.     Bank is entitled to collect upon the C.D. under the terms of the Loan Documents.

26.     Pennsylvania law, which governs the Loan Documents, recognizes a common law right of setoff wherein a debtor's interest in a bank account is extinguished in favor of the bank once depositer's obligation to that bank matures. *In re Szymanski*, 413 B.R. 232, 245 (Bankr. E.D. Pa. 2009).

27.     Debtor and Debtor/Guarantor currently have an outstanding One Million Dollar ($1,000,000.00) plus interest as set forth in the Master Letter of Credit Agreement obligation to Bank as Bank paid One Million Dollars ($1,000,000.00) to Landlord on April 12, 2013.

28.     Under both the Loan Documents and controlling Pennsylvania law, Bank is entitled to collect the C.D. to satisfy the One Million Dollar ($1,000,000.00) debt plus interest as set forth in the Master Letter of Credit Agreement and will be successful on the merits of any action regarding the rights to these proceeds.

29.     Further, Bank is entitled to relief from stay pursuant to 11 U.S.C. § 362(d).

30.     As set forth above, Debtor does not have any equity in the C.D. The C.D. acted as collateral for the Letter of Credit. After Debtor defaulted on its lease obligations to Landlord, Landlord redeemed the Letter of Credit to the Bank's detriment.

31.     The C.D. is not necessary for an effective reorganization because Debtor and Debtor/Guarantor do not seek to reorganize, but have filed under Chapter 7 seeking to be liquidated. *See, i.e., In re Elicker*, 100 B.R. 180, 182 (Bankr. M.D. Pa. 1989).

32.     Additionally, Bank has already performed services for Debtor/Guarantor under the Cash Management Master Agreement for which it is owed $2,162.51.

33.     Under New Jersey Law, a bank "has a right of set off 'against all monies or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank.'" *All American Auto Salvage v. Camp's Auto Wreckers*, 146 N.J. 15, 24, 679 A.2d 627, 631 (1996). A Bank is entitled to exercise its right of setoff to recover service and processing fees. *Ibid.*

34.     The Bankruptcy stay should be terminated so that Bank may dispose of the C.D. to recover the $1,000,000 due and owing from Debtor and Debtor/Guarantor under the Loan

Documents and the $2,162.51 due and owing from Debtor/Guarantor under the Cash Management Master Agreement.

WHEREFORE, TD Bank, N.A. respectfully requests that this Honorable Court enter an Order in the form attached hereto terminating the automatic stay as to the Certificate of Deposit and permitting TD Bank, N.A. to exercise its rights in regard thereto, along with such other relief as this Honorable Court deems proper.

Dated: June 11, 2013

REGER RIZZO & DARNALL LLP

Marc J. Phillips (No. 4445)
1001 North Jefferson Street, Suite 202
Wilmington, Delaware  19801
Phone: (302) 652-3611
Fax: (302) 652-3620
mphillips@regerlaw.com

-and-

BUCKLEY, BRION, McGUIRE,
MORRIS & SOMMER LLP
Sigmund J. Fleck, Esquire
Attorney ID #: 76182
118 West Market Street, Suite 300
West Chester, PA 19382
Phone: (610) 436-4400
Fax: (610) 436-6179
sfleck@buckleyllp.com

*Attorneys for TD Bank, N.A.*