## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| PolyMedix Pharmaceuticals, Inc., *et al.*[1], | : | Case No. 13-10690 (BLS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Proposed Interim Hearing Date:  First Available Date** |
| | : | **Proposed Interim Objection Deadline: At Hearing** |
| | : | **Proposed Final Hearing Date: TBD** |
| | : | **Proposed Final Objection Deadline:  TBD at interim hearing** |

**TRUSTEE'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED POST-PETITION FINANCING; (II) GRANTING SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS FOR POST-PETITION FINANCING OBLIGATIONS; (III) AUTHORIZING THE TRUSTEE'S CONTINUED USE OF CASH COLLATERAL; (IV) APPROVING SHARING ARRANGEMENT; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

Jeoffrey L. Burtch, in his capacity as the chapter 7 trustee (the "Trustee") for the estates

(the "Estates") of the above-captioned debtors (the "Debtors"), respectfully files this motion (the

"Motion") for entry of an interim order ("Interim Order") substantially in the form of order

attached as Exhibit A hereto (the "Proposed Order"): (a) (i) authorizing the Trustee to obtain

secured post-petition loans, advances and other accommodations (the "Post-Petition Financing")

from MidCap Financial SBIC, LP, in its capacity as administrative agent and lender ("Agent"),

up to an aggregate principal amount not to exceed the sum of (x) $160,000 plus (y) an amount to

be pre-approved by Agent for funding the fees and expenses of the Trustee's special intellectual

property counsel, Pepper Hamilton LLP, related to the preservation of the Estates' intellectual

property, up to a cap of $100,000; (ii) granting Agent, pursuant to sections 364(c) and 364(d) of

title 11 of the United States Code (the "Bankruptcy Code"), security interests in all of the

Estates' presently owned and after-acquired property and Pre-Petition Collateral (as defined

---

[1]	The Debtors in these chapter 7 cases, along with each Debtor's bankruptcy case number, are PolyMedix, Inc. (13-10689) and PolyMedix Pharmaceuticals, Inc. (13-10690).

below) to secure the Post-Petition Financing obligations; and (iii) granting Agent, pursuant to section 364(c)(1) of the Bankruptcy Code, priority in payment with respect to such Post-Petition Financing obligations over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, except as specifically otherwise provided in the Proposed Order; (b) authorizing the Trustee, pursuant to section 363(c) of the Bankruptcy Code, to continue his use of Cash Collateral (as defined below) pursuant to the Cash Collateral Order (as defined below), as amended by the Proposed Order; (c) approving a certain sharing arrangement between the Trustee and Agent (the "Sharing Arrangement") as set forth in the Proposed Order; (d) scheduling and establishing notice procedures with respect to a final hearing on the Motion (the "Final Hearing"), to consider entry of a final order authorizing on a final basis, *inter alia*, the Post-Petition Financing, continued use of Cash Collateral, and the Sharing Arrangement (the "Final Order"); and (e) granting related relief.   In support of the Motion, the Trustee states as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 361, 363, 364 and 507 of the Bankruptcy Code and Rules 4001(b), (c) and (d), 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

16660032\4 07998.0001.000/335803.000
07/12/2013

**BACKGROUND**

3.      On April 1, 2013 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Bankruptcy Cases") by each filing voluntary petitions for relief under chapter 7 of the Bankruptcy Code.   The Trustee was appointed in the Bankruptcy Cases shortly after the Petition Date.  The Bankruptcy Cases are being jointly administered.

**A.      The Debtors' Business and Assets**

4.      The Debtors, PolyMedix, Inc. and its wholly-owned subsidiary, PolyMedix Pharmaceuticals, Inc., are a clinical stage biotechnology company which developed small-molecule drugs to mimic the activity of host defense proteins (HDPs) for the treatment of infectious diseases and innate immunity disorders.  The Debtors' compounds are designed to imitate the mechanism of action of HDPs, which contribute to natural human immunity.   In contrast to existing antibiotics, the Debtors' antibiotic, known as brilacidin, was designed to exploit a method of bacterial cell killing, via biophysical membrane attack, against which bacteria have not shown development of resistance in multiple preclinical studies.  Prior to the Petition Date, the Debtors planned to initiate a study with brilacidin in patients with acute bacterial skin structure infections and also to develop brilacidin as a topical treatment for radiation and chemotherapy-induced cancer oral mucositis, a common and often debilitating complication of cancer treatments.

**B.      The Debtors' Pre-Petition Indebtedness to Agent**

5.      The Debtors and Agent are parties to a certain Loan and Security Agreement dated as of April 5, 2012, as amended pursuant to Amendment No. 1 to Loan and Security Agreement dated June 11, 2012, and Amendment No. 2 to Loan and Security Agreement dated January 16, 2013 (the "Loan Agreement"), pursuant to which Agent made certain loans and other

16660032\4 07998.0001.000/335803.000
07/12/2013

financial accommodations to the Debtors. The Loan Agreement and all documents, instruments, and agreements executed in connection therewith (in each case, as amended, restated, supplemented or otherwise modified from time to time), shall collectively be referred to herein as the "Pre-Petition Agreements".

6.    In accordance with the Pre-Petition Agreements, each of the Debtors granted to Agent a first priority, perfected, continuing security interest in and lien upon all of the following property of each of the Debtors, whether now owned or hereafter acquired or existing, and wherever located (collectively, including "Cash Collateral" (defined below), the "Pre-Petition Collateral"):

(a)    all goods, Accounts (including health-care insurance receivables), Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, investment accounts, commodity accounts and other Collateral Accounts, all certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), IP Proceeds, securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and

(b)    all Borrower's Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

7.    Agent recorded UCC-1 Financing Statements with the Delaware Secretary of State on April 5, 2012 and January 17, 2013 to evidence its security interests in the Pre-Petition Collateral.

8.     As of the Petition Date and in accordance with the terms of the Pre-Petition Agreements, Agent has asserted that Debtors are indebted to Agent, without defense, counterclaim or offset of any kind, in the principal amount of $6,346,666.66, plus accrued interest, fees and costs (the "Pre-Petition Obligations").

9.     Pursuant to the Pre-Petition Agreements, all of the Debtors' cash on hand and cash equivalents as of the Petition Date constitute cash collateral of Agent within the meaning of section 363(a) of the Bankruptcy Code (collectively, "Cash Collateral").

10.    Various defaults and events of default have occurred and are continuing under the Pre-Petition Agreements and, as a result, Agent asserts that it has the right, subject to the Pre-Petition Agreements, to accelerate the Pre-Petition Obligations, foreclose on the Pre-Petition Collateral (if relief from the automatic stay under section 362 of the Bankruptcy Code is granted), and cease advancing funds pursuant to the Loan Agreement.

C.     **The Trustee's Use of Cash Collateral Pursuant to Cash Collateral Order**

11.    The Trustee intends to sell substantially all of the Estates' assets during the Bankruptcy Cases.   The Trustee required immediate access to cash to pay certain necessary fees and professional expenses in connection with (i) the preliminary solicitation of interest in the Estates' assets, and (ii) the upkeep and maintenance of, and governmental filings relating to, the Estates' worldwide intellectual property rights pending sale or other disposition, to preserve the value of the Estates' assets and avoid immediate and irreparable harm to the Estates.

12.    Following arm's length negotiations, the Trustee and Agent agreed that the Trustee would be permitted to use the Cash Collateral, under certain terms and conditions, for a limited period of time, to end no later than May 31, 2013 (the "Cash Collateral Period").

5

13.     On May 15, 2013, the Trustee filed a motion for entry of interim and final orders (a) authorizing use of Cash Collateral pursuant to 11 U.S.C. § 363, (b) granting adequate protection in connection therewith pursuant to 11 U.S.C. § 361, (c) scheduling a final hearing pursuant to Federal Bankruptcy Procedure 4001, and (d) granting related relief (the "Cash Collateral Motion") [Docket No. 26].

14.     The Court conducted an interim hearing on the Cash Collateral Motion on May 17, 2013, at the conclusion of which it entered an order authorizing the use of Cash Collateral on an interim basis as requested in the Cash Collateral Motion (the "Interim Cash Collateral Order") [Docket No. 33].   On June 11, 2013, having found that due and sufficient notice of a final hearing was given and that no objections to the entry of a final order granting the Cash Collateral Motion had been filed, and that good and sufficient cause existed therefor, the Court entered a final order granting the relief requested in the Cash Collateral Motion (the "Final Cash Collateral Order" and together with the Interim Cash Collateral Order, the "Cash Collateral Order") [Docket No. 67].

15.     Pursuant to the Cash Collateral Order, the Trustee's authorization to use Cash Collateral was limited to payment of the necessary and required expenses identified in the budget attached as an exhibit to the Cash Collateral Order during the Cash Collateral Period.  The Cash Collateral Period expired upon the close of business on May 31, 2013.

16660032\4 07998.0001.000/335803.000
07/12/2013

**D.    The Trustee's Continued Need for Financing**

16.    The Trustee requires additional funds in order to conduct the anticipated sale process (the "Sale Process") and fully administer the Estates.

17.    Following arm's length negotiations, the Trustee and Agent have agreed that the Trustee may use additional Cash Collateral under the terms and conditions set forth in the Proposed Order.

18.    In addition, following arm's length negotiations, the Trustee has also arranged for the Post-Petition Financing to be provided by Agent.  The terms and conditions of the Post-Petition Financing are set forth in the Proposed Order.

19.    Further, following arm's length negotiations, the Trustee has reached an agreement with Agent regarding apportionment of proceeds that are ultimately realized from assets of the Estates (the "Sharing Arrangement"), which Sharing Arrangement is a critical component of the Proposed Financing.  The terms and conditions of the Sharing Arrangement are set forth in the Proposed Order.

## SUMMARY OF RELIEF REQUESTED

20.    The Trustee seeks interim, and then final, approval of the terms set forth in the Proposed Order, which, *inter alia*:

    a.    authorizes the Trustee to obtain the Post-Petition Financing;

    b.    authorizes the Trustee to continue using the Cash Collateral pursuant to the Cash Collateral Order, as modified;

    c.    approves the Sharing Arrangement; and

    d.    grants related relief.

16660032\4 07998.0001.000/335803.000
07/12/2013

21.     In addition, the Trustee requests that the Court: (i) schedule a Final Hearing, pursuant to Bankruptcy Rule 4001, for not later than fourteen (14) days after the entry of the Interim Order, to consider entry of a Final Order approving the terms of the Interim Order on a final basis; and (ii) approve the Trustee's proposed notice procedures with respect to the Final Hearing.

22.     By a separate Motion to Shorten, filed concurrently with this Motion, the Trustee is requesting that the Court scheduled an expedited interim hearing for consideration of this Motion and the attached Proposed Order as soon as is reasonably possible.

## BASIS FOR RELIEF

**A.     The Post-Petition Financing and Continued Use of Cash Collateral Should be Approved.**

23.     In the absence of the Post-Petition Financing and continued ability to use the Cash Collateral, the Trustee will not have sufficient available funding to pay the expenses of administering the Bankruptcy Cases, including, without limitation, conducting the Sale Process. In addition, the Trustee's need for this financing is immediate.  Without this financing, serious and irreparable harm to the Estates will occur.

24.     Given the Debtors' current financial condition, financing arrangements and capital structure, the Trustee cannot obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Trustee (i) granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, (ii) securing, pursuant to sections 364(c) and (d) of the Bankruptcy Code, such indebtedness and obligations with security

interests in and liens on substantially all property of the Estates, and (iii) providing for adequate protection of Agent's interests.

### i.    Primary Terms of the Post-Petition Financing

25.    Under the Post-Petition Financing, Agent will provide up to an aggregate principal amount not to exceed the sum of (x) $160,000 plus (y) an amount to be pre-approved by Agent for funding the fees and expenses of the Trustee's special intellectual property counsel, Pepper Hamilton LLP, related to the preservation of the Estates' intellectual property (the "IP Costs"), to be used in accordance with a certain agreed budget (the "Budget"), a copy of which is attached as Exhibit 1 to the Proposed Order.

26.    Interest on the Post-Petition Financing shall accrue at the per annum, non-default rate equal to eleven and 95/100 percent (11.95%) set forth in the Pre-Petition Agreements.

27.    The Budget is for the period from the Petition Date through and including the earlier of (i) September 15, 2013 and (ii) the date of termination upon the occurrence of an Event of Default as defined in the Proposed Order (the "Termination Date").   The Budget reflects, on a line item basis, all necessary and required expenses which the Trustee expects to incur during this term.   The Trustee will be authorized to use the proceeds of the Post-Petition Financing and the Collateral (as defined below) only for payment of such items as is set forth in the Budget, subject to the terms and conditions set forth in the Proposed Order.

28.    As security for the Post-Petition Financing and certain amounts due Agent in accordance with same (such amounts shall collectively be referred to herein as the "Post-Petition Obligations"), Agent will be granted, pursuant to sections 364(c) and (d) of the Bankruptcy Code, effective as of the Petition Date, valid and perfected senior security interests in, and liens on (collectively, the "Liens"), all assets of the Estates of any nature whatsoever and wherever

located, tangible or intangible, whether now or hereafter acquired, including, without limitation, accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles (including, without limitation, all choses in action, trademarks, patents, rights under licenses (whether as licensor or licensee) and other intellectual property, rights with respect to insurance policies, state, federal and foreign tax and duty refunds, open purchase orders and customer lists), investment property, leases and all substitutions thereto, accessions, rents and proceeds of the foregoing, wherever located, including insurance and other proceeds, and fifty percent (50%) of the proceeds of recoveries, claims and causes of action arising under the avoidance provisions of Chapter 5 of the Bankruptcy Code (the "Avoidance Actions," and collectively, with all proceeds and products of any or all of the foregoing and with the Pre-Petition Collateral, the "Collateral").  Agent's Liens on the Collateral shall enjoy the following priority:

a.       pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of the Estates' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien senior to the Liens of Agent on the Petition Date;

b.       pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior perfected Lien upon all of the Estates' right, title and interest in, to and under the Pre-Petition Collateral, provided that such first-priority senior Lien shall be subject and junior to any prior liens of third parties that exist pursuant to law which were properly perfected (or become properly perfected after the Petition Date under section 546(b) of the Bankruptcy Code) and are senior in priority to the Liens of the Agent prior to the Petition Date ("Prior Permitted Liens"); and

16660032\4 07998.0001.000/335803.000
07/12/2013

c.      pursuant to section 364(c)(3) of the Bankruptcy Code, a second priority, junior perfected Lien upon all of the Estates' right, title and interest in, to and under all other Collateral which is subject to Prior Permitted Liens to the extent such perfection in respect of a pre-Petition Date claim is expressly permitted under the Bankruptcy Code.

29.     Except to the extent expressly set forth in clauses (b) and (c) of the above paragraph, the Liens granted to Agent to secure the Post-Petition Obligations shall not be subordinated to or made pari passu with any other lien or security interest.  The provisions of any intercreditor agreements or subordination agreements which subordinate liens and security interests to the liens and security interests of Agent or other indentures which subordinate any claims to the claims of Agent shall remain in full force and effect and shall continue with respect to the liens and security interests granted to Agent in the Collateral.

30.     In accordance with section 364(c)(1) of the Bankruptcy Code, the Post-Petition Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code (the "Superpriority Claims"), and shall at all times be senior to the rights of the Trustee, the Estates and any of the Debtors' creditors.  Subject only to the Sharing Arrangement, no cost or expense of administration shall be senior to, or pari passu with, the Superpriority Claims of Agent arising out of the Post-Petition Obligations.

31.     As set forth in the Proposed Order, an "Event of Default" will include the following:  (i) the entry of an order dismissing either of the Bankruptcy Cases without prior written consent from Agent, (ii) the entry of an order granting a superpriority claim or lien (other than a Prior Permitted Lien) equal or superior to the claims and liens granted to Agent without

11

Agent's prior written consent; (iii) the entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing (except as modified in a final order acceptable to Agent) without Agent's prior written consent, (iv) the entry of any order granting any relief from the automatic stay allowing a third party to proceed against any asset or assets of the Estates which if granted would have a material adverse effect on the Sale Process, provided however, that this clause (iv) excepts the granting of relief from the automatic stay pursuant to any motion that has been filed prior to the date of entry of the Interim Order, (v) the commencement of any adversary proceeding against Agent relating to the Pre-Petition Obligations, the Post-Petition Obligations or the Collateral, (vi) the Trustee's filing, without the express written consent of Agent, of a motion requesting authority to incur indebtedness either (A) having administrative expense priority equal or superior to the administrative expense priority granted to Agent under the Interim Order and Final Order or (B) secured by a security interest or lien with priority equal or superior to the priority of Agent's security interests in or Liens on the Collateral, (vii) the commencement of actions (other than claims pursuant to section 506(c) of the Bankruptcy Code) by the Trustee materially adverse to Agent or its rights and remedies under the Interim Order, the Final Order, the Cash Collateral Order or any other order of this Court; and (viii) the failure to repay the Post-Petition Obligations on or before the Maturity Date of September 15, 2013.

**ii.**    **Required Disclosures under Local Bankruptcy Rule 4001-2**

32.    Rule 4001-2 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Bankruptcy Rules") requires a movant to highlight for the Court's scrutiny certain provisions in a proposed financing arrangement.  Such provisions include, *inter alia*, "[p]rovisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or the waiver of claims

12

against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order…to investigate such matters."  See Local Bankruptcy Rule 4001-2(a)(i)(B).

33.    The Proposed Order incorporates certain such stipulations and provisions.  The full text of such provisions is as follows:

> In consideration of the agreements set forth herein, Agent and the Trustee hereby agree that (i) the Pre-Petition Obligations constitute legal, valid and binding obligations of the Estates, enforceable in accordance with the terms of the Pre-Petition Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (ii) no offsets, defenses or counterclaims exist to the currently outstanding Pre-Petition Obligations, (iii) Agent's liens and security interests in and upon the Pre-Petition Collateral are first priority, valid, enforceable, perfected and not subject to avoidance, subordination or challenge; (iv) no portion of the Pre-Petition Obligations is subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (v) Agent's security interests in, and liens upon, the Pre-Petition Collateral have priority with regard to all other liens, subject only to the liens granted herein and the terms of this Order.

See Proposed Order, ¶ I.

> The Stipulations set forth in this Order, including those with respect to the extent, validity, perfection, priority and enforceability of Agent's liens on the Pre-Petition Collateral or any other claims whatsoever against Agent, including any claims arising from or related to the fees, charges, interest, commissions, and expenses charged by Agent prior to the Petition Date pursuant to the terms of the Pre-Petition Agreements, are for all purposes binding upon all parties in interest and shall be recognized as valid, binding and in full force and effect, not subject to defense, counterclaim, or offset of any kind, and all parties in interest shall forever be barred from asserting any claims against Agent.

See Proposed Order, ¶ 11.

> In consideration for the Post-Petition Financing and the other agreements between the Trustee (on behalf of the Estates) and the Agent as set forth herein, the Trustee, on behalf of himself and the

Estates (collectively, the "<u>Releasors</u>") forever releases, discharges and acquits Agent and its respective officers, directors, employees, agents, attorneys and predecessors in interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Order is entered, with respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Agreements, the Post-Petition Obligations or the Post-Petition Financing; <u>provided</u>, <u>however</u>, the foregoing release shall not release Agent from its obligations under this Order.

<u>See</u> Proposed Order, ¶ 33.[2]

### iii.    The Post-Petition Financing Terms are Necessary and Appropriate.

34.    Pursuant to section 364(d)(1) of the Bankruptcy Code, "The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if – (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."  11 U.S.C. § 364(d)(1).

35.    Agent will not extend post-petition credit to the Trustee without receiving senior liens pursuant to section 364(d) of the Bankruptcy Code and superpriority claims pursuant to section 364(c)(1).   In light of the facts and circumstances of these cases, the Trustee believes that he would not be able to obtain post-petition financing pursuant to sections 364(b) or (c) of the Bankruptcy Code.  Due to the very short time frame within which he act, and the exigencies that he faces, the Trustee believes that we would not be able to obtain post-petition financing on better terms under section 364(d), if at all, in time to prevent a precipitous decline in the value of

---

[2] The Proposed Order does not provide for a waiver of rights under section 506(c) of the Bankruptcy Code.

14

the Estates' assets.    Moreover, while Agent, as the pre-petition secured party, consents to the relief requested in this Motion, it would not consent to the granting of any priming lien to any third party.

36.    Bankruptcy Rule 4001 governs the use of post-petition financing and provides that the Court may authorize a trustee to obtain post-petition financing on a final basis after a hearing on at least fourteen (14) days' notice, and may authorize a trustee to obtain interim post-petition financing "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing" on less than fourteen (14) days' notice.

37.    Without obtaining the Post-Petition Financing, the Trustee will lack the funds to maintain the Estates' assets and conduct an orderly Sale Process.    Consequently, without the Post-Petition Financing, the Estates will suffer irreparable harm.

38.    Further, because of the expedited need for financing, the Trustee believes that he would not have time to locate an alternative source of post-petition financing, on more favorable terms, in time to prevent a precipitous decline in the value of the Estates' assets.    Consequently, the Trustee respectfully submits that his entering into and obtaining the Post-Petition Financing would be in the Estates' best interests.

### iv.    Continued Use of Cash Collateral

39.    The Trustee requests that the Court order that the Cash Collateral Order governing the Trustee's use of Cash Collateral and the provision of adequate protection in favor of Agent shall remain in full force and effect, with certain limited modifications.    First, the Cash Collateral Period will be extended until the earlier of September 15, 2013 and the Termination Date.    Second, there shall be a further carve-out of $35,000 (the "Additional Carve Out"), which shall be in addition to the Carve Out provided for under the Cash Collateral Order.    In the event

15

of an inconsistency between the Cash Collateral and the Proposed Order, the terms of the Proposed Order (which will become the Interim Order and, eventually, the Final Order) shall govern.

**B.      The Sharing Arrangement Should Be Approved.**

      **i.      Terms of the Sharing Arrangement**

40.      In resolution and settlement of issues raised by the Trustee with respect to the avoidability of certain liens and security interests granted by the Debtors to Agent, the Trustee and Agent have agreed to apply Cash Collateral, the Sale Proceeds (as defined below), proceeds of Collateral otherwise collected by the Trustee (collectively, the "Other Collateral Proceeds"), and recoveries from the Avoidance Actions as set forth below.

41.      All Cash Collateral existing on the Petition Date shall be used to pay the expenses set forth on the budget attached to the Cash Collateral Order, for the period up to and including May 31, 2013.   Agent waives any challenge to such application and the chapter 7 administrative expenses incurred by the Trustee through such date.  With respect to any line item on the budget attached to the Cash Collateral Order, the Trustee may pay an amount in excess of the amount that was budgeted for such line item, so long as the aggregate amount of expenses paid pursuant to the Cash Collateral Order does not exceed the maximum aggregate amount that was permitted under the budget attached to the Cash Collateral Order.

42.      The (i) Other Collateral Proceeds, and (ii) in the event of a sale (or sales together constituting a sale) of any of the Estates' assets (pursuant to the Sale Process, liquidation or otherwise), the gross cash proceeds and non-cash proceeds[3] from the sale(s) of the Collateral

---

[3] Any non-cash proceeds from the sale(s) of the Collateral shall be distributed based on a valuation methodology acceptable to both Agent and the Trustee.

(collectively, the "Sale Proceeds"), shall be distributed and applied strictly in the order set forth below, without further Order of the Court:

  a.  first, to the Agent, in an amount equal to that portion of the Post-Petition Obligations representing Agent's Expense Reimbursement;

  b.  second, to the Agent, in an amount equal to that portion of the Post-Petition Financing representing accrued and accruing interest;

  c.  third, to the Agent, in an amount equal to that portion of the Post-Petition Financing consisting of principal;

  d.  fourth, to the Trustee, in an amount necessary to pay all unpaid amounts under the Budget, including without limitation the Carve Out under the Cash Collateral Order and the Additional Carve Out under this Order, for distribution pursuant to further Orders of the Court;

  e.  fifth, to the Trustee, in an amount equal to (x) seven and one-half percent (7.5%) of Sale Proceeds and Other Collateral Proceeds up to $3,500,000, plus (y) twelve and one-half percent (12.5%) of Sale Proceeds and Other Collateral Proceeds in excess of $3,500,000, for distribution pursuant to further Orders of the Court; and

  f.  sixth, the remainder of the Sale Proceeds and Other Collateral Proceeds shall be paid to the Agent for application against the Pre-Petition Obligations.

43.  Recoveries from the Avoidance Actions (obtained through judgment or settlement) shall be applied as follows:

  a.  first, to the payment of all allowed costs, fees and expenses, including attorneys' fees of the Trustee in connection with the prosecution of the Avoidance Actions and collection of recoveries related thereto; and

17

b.      second, divided equally between the Trustee (for payment of allowed claims other than Agent's claims) and Agent.

44.     In the event Agent exercises its right to credit bid at any sale of the Collateral, such credit bid shall include a cash component (the "Cash Component") equal to $100,000; provided however, in the event Agent's credit bid exceeds a cash bid in excess of $2,000,000, the Cash Component shall equal seven and one-half percent (7.5%) of the highest cash bid for the Collateral.   Upon payment of the Cash Component, Agent shall not be required to fund the Additional Carve Out, but all other amounts set forth on the Budget shall be paid.

**ii.**     **The Sharing Arrangement is in the Best Interest of the Estates**

45.     The Court has the authority to approve the Sharing Arrangement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."

46.     Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.   The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"  Myers v. Martin (In re Martin), 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶9019.03 [1] (15th ed. 1993)).  The approval of compromises and settlements is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

47.     Before approving a settlement under Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate."   In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting Louise's, 211 B.R. at

18

801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 425. The TMT rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved. Rather, the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 COLLIER ON BANKRUPTCY, ¶9019.2, 9019-4 (15th ed.) (quoting In re Drexel Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991)).

48. The Trustee submits that the Sharing Arrangement will be in the best interests of the Estates. The Sharing Arrangement will provide the Trustee with funds for potential distribution to unsecured creditors and, if necessary, to complete his administration of the Estates. Without these funds and the financing provided hereunder, unsecured creditors would likely receive no or very little distribution from the Estates.

49. Based on the foregoing, the Trustee respectfully submits that the Court should approve the Sharing Arrangement as being in the best interests of the Estates, and authorize the Trustee to take any and all actions necessary to implement the Sharing Arrangement.

## NEED FOR INTERIM APPROVAL AND SCHEDULING OF INTERIM HEARING

50. Local Bankruptcy Rule 4001-2(b) provides, "When Financing Motions [which include cash collateral and/or post-petition financing motions] are filed with the Court on or shortly after the petition date, the Court may grant interim relief pending review by interested parties . . . . Such interim relief shall be only what is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

19

51.     By a Motion to Shorten filed concurrently with this Motion, the Trustee is requesting that the Court conduct an expedited interim hearing on this Motion and approve (from and after entry of the Interim Order and pending the Final Hearing) the relief requested herein on an interim basis so that the Trustee may, among other things, maintain the Estates' assets and continue the Sale Process.   Interim access to the additional Cash Collateral and Post-Petition Financing is necessary to enable the Trustee to protect the Estates' assets from diminution in value and, consequently, would benefit the creditor body as a whole.  Accordingly, the Trustee's proposed interim relief is necessary to avoid immediate and irreparable harm.

52.     By the Motion to Shorten, the Trustee is requesting that the Court schedule an expedited interim hearing for consideration of the attached Proposed Order on the Court's first available date on or after July 15, 2013.

## **REQUEST FOR FINAL HEARING**

53.     The Trustee requests that the Court set a date for the Final Hearing that is as soon as reasonably possible following entry of the Interim Order, but in no event earlier than fourteen (14) days following the service of this Motion, and fix a deadline applicable to objections, if any.

## **NOTICE**

54.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known, by facsimile, e-mail, overnight courier, and/or hand delivery: (i) the office of the United States Trustee for the District of Delaware; (ii) all known parties asserting liens on the Estates' assets; (iii) counsel to Agent; (iv) counsel to the Internal Revenue Service; and (v) all parties that filed a notice of appearance and/or request for service of notices in these

cases (collectively, the "Initial Notice Parties").  The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.  Following the entry of the Interim Order and scheduling of the Final Hearing, the Trustee will immediately provide notice of the Motion and a copy of the Interim Order, and notice of the Final Hearing, to (i) the Initial Notice Parties and (ii) any party that has filed a request for notice in the Bankruptcy Cases by within twenty-four (24) hours of the entry of the Interim Order.

## NO PRIOR REQUEST

55.    No prior motion for the relief requested herein has been made to this or any other court.

16660032\4 07998.0001.000/335803.000
07/12/2013

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter an Interim Order, substantially in the form of the attached Proposed Order: (i) granting this Motion on an interim basis; (ii) authorizing the Trustee, on an interim basis, to continue using the Cash Collateral and obtain and use the Post-Petition Financing pursuant to the terms and conditions set forth in the Proposed Order; (iii) approving, on an interim basis, the Sharing Arrangement; (iv) scheduling a Final Hearing on the Motion for consideration of the Final Order which would grant all relief on a final basis; (v) approving the notice procedures as described herein; and (vi) granting certain related relief, as well as such additional relief that the Court may deem appropriate.

Dated:  July 12, 2013

COZEN O'CONNOR

*/s/ Mark E. Felger*
_____
Mark E. Felger (No. 3919)
1201 North Market Street, Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2087
Facsimile:  (302) 295-2013

and

Eric L. Scherling
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2042
Facsimile: (215) 701-2081

*Special Counsel for the Trustee*